# IN THE SUPREME COURT OF THE STATE OF NEVADA

BRIAN J. HORNER,
Appellant/Cross-Respondent,
vs.
LAWRENCE J. SEMENZA,
Respondent/Cross-Appellant.

No. 58574

**FILED**

MAY 3 1 2013



TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

*ORDER AFFIRMING IN PART,*
*REVERSING IN PART AND REMANDING*

This is an appeal and cross-appeal from a district court summary judgment and an order granting a motion in limine in a civil action regarding an escrow arrangement. Eighth Judicial District Court, Clark County; Abbi Silver, Judge.

An escrow agent must perform his or her duties "with scrupulous honesty, skill and diligence." *Broussard v. Hill*, 100 Nev. 325, 329, 682 P.2d 1376, 1378 (1984). If an escrow agent misappropriates escrow funds, an injured party may recover damages against the agent in the amount of money that the agent misused. *Hart v. Hecht*, 104 Nev. 382, 383-84, 760 P.2d 114, 115 (1988). Here, we address whether appellant Brian J. Horner may recover from respondent Lawrence J. Semenza the money that Semenza held in escrow but did not return to Horner, in violation of the escrow agreement's terms. We conclude that he may, even though the money was either liquidated damages or a penalty under a purchase agreement (the Agreement) between Horner and another party.

Under the Agreement, Horner purchased real property from Oilmen Participation, Inc., and the parties had Semenza hold in escrow Horner's final payment to Oilmen, totaling $355,000. The Agreement

required the final payment to be returned to Horner if Oilmen did not remove by a specific date all encumbrances from the real property that Horner purchased from Oilmen. Semenza received and deposited Horner's final payment in a trust account. Despite Oilmen failing to remove all of the encumbrances by the specified date, Semenza gave Oilmen the final payment. Horner filed a claim against Semenza to recover the final payment amount.

On summary judgment, the district court concluded that (1) Semenza assumed and breached his escrow agent duties; (2) the Agreement's requirement for the return of the final payment was a liquidated damages clause that was only enforceable against the parties to the Agreement, which did not include Semenza; (3) Horner was not estopped from asserting his claims against Semenza; and (4) issues of fact remained as to Horner's actual damages. The district court also granted a motion in limine that barred Horner from using the Agreement's provision on the return of the final payment as evidence of damages against Semenza because the provision pertained to liquidated damages that could not be enforced against Semenza. Thereafter, the parties entered a stipulated judgment that allowed for an appeal of the summary judgment and the order granting the motion in limine.

This appeal and cross-appeal followed. On appeal, Horner contests the order granting the motion in limine and the district court's summary judgment determination that Horner could not recover the final payment amount as damages against Semenza. On cross-appeal, Semenza challenges the district court's conclusion that he was an escrow agent who owed and breached his escrow agent duties to Horner.

Semenza also argues that the district court abused its discretion in rejecting his equitable estoppel defense.

We conclude as follows. The district court did not err in determining that Semenza assumed and owed Horner escrow agent duties because Semenza's escrow agent status and duties arose from his conduct under the Agreement's plain language. The district court did not err in concluding that Semenza breached his escrow agent duties to Horner because Semenza, in violation of the terms that governed the final payment's distribution, failed to return the final payment to Horner. But the district court erred in finding that Horner may not recover the final payment amount from Semenza. Horner sought recoverable damages by seeking this money that Semenza misappropriated in violation of the terms governing the final payment's dispersal. Hence, the district court also abused its discretion in barring Horner from using the Agreement's requirement for the return of the final payment as evidence of damages against Semenza. Last, the district court did not abuse its discretion in rejecting Semenza's estoppel defense because he was not ignorant of the facts that triggered his duty to give Horner the final payment and Horner did not engage in conduct that gave Semenza the right to believe that Horner intended for Semenza to give Oilmen the final payment.

*The district court's determinations on summary judgment*

Semenza argues that the district court erred in concluding that he breached his escrow agent duty. He asserts that a question of fact remained as to whether he had this duty since the Agreement was ambiguous as to who was obligated to return the final payment to Horner. Semenza also asserts that the district court did not err in finding that Horner may not recover the final payment amount, contending that the Agreement's requirement as to the final payment's distribution

constituted liquidated damages or a penalty that could not be enforced against Semenza.

Horner contests the district court's determination that he could not recover the final payment amount from Semenza. He argues that he pursued recoverable damages against Semenza by seeking the final payment amount that Semenza misappropriated in violation of the terms governing its distribution.

A district court's conclusions when granting summary judgment are reviewed de novo. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). Summary judgment is appropriate where the pleadings and evidence, when viewed in the nonmoving party's favor, show that there are no genuine issues of material fact and that "'the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting NRCP 56(c)). We refer to the substantive law in determining if a factual issue is material. *Id.* at 731, 121 P.3d at 1031. "A factual dispute is genuine when the evidence is such that a rational trier of fact could return a verdict for the nonmoving party." *Id.*

Here, evaluating the district court's conclusions requires us to interpret the Agreement. If no facts are disputed, "contract interpretation is a question of law" and de novo review applies. *Lehrer McGovern Bovis, Inc. v. Bullock Insulation, Inc.*, 124 Nev. 1102, 1115, 197 P.3d 1032, 1041 (2008). Absent an ambiguity, we interpret contracts based upon the language's plain meaning. *Dickenson v. State, Dep't of Wildlife*, 110 Nev. 934, 937, 877 P.2d 1059, 1061 (1994). Ambiguity exists if the terms in question are "reasonably susceptible to more than one interpretation." *Shelton v. Shelton*, 119 Nev. 492, 497, 78 P.3d 507, 510 (2003) (internal quotations omitted). If an ambiguity exists that requires "extrinsic

evidence to discern the parties' intent, summary judgment is improper." *Dickenson*, 110 Nev. at 937, 877 P.2d at 1061.

*Semenza assumed and owed escrow agent duties to Horner*

An escrow agent's duties arise from an escrow agreement. *Broussard v. Hill*, 100 Nev. 325, 329, 682 P.2d 1376, 1378 (1984). The agent owes these duties to the parties to the agreement. *Colonial Sav. & Loan Ass'n v. Redwood Empire Title Co.*, 46 Cal. Rptr. 16, 18 (Ct. App. 1965). An escrow agreement exists when a buyer and seller agree to conditions for a deposit, the escrow agent agrees to receive and distribute the deposit under the conditions, and the agent receives the deposit. *Hoffman v. Eighth Judicial Dist. Court*, 90 Nev. 267, 270, 523 P.2d 848, 850 (1974). An escrow agreement and the status as an escrow agent do not require a written agreement; the agreement and status stem from the parties' intent and conduct. *See id.* ("The agreement by the seller and buyer to all the terms of the escrow instructions and the acceptance by the escrow agent of the position of depository create the escrow."); 30A C.J.S. *Escrows* § 13 (2007) ("Whether an instrument is in escrow depends on the intention of the parties, as manifested by their . . . words and purposes, and no . . . form of words is necessary, and the agreement need not be in writing.").

Semenza's conduct, when considered with a reasonable reading of the Agreement, made him an escrow agent. The Agreement's plain language stated that the final payment would "remain in escrow with . . . Semenza." It also required that the final payment be returned to Horner if Oilmen failed to remove the encumbrances by the Agreement's deadline. Thus, Horner and Oilmen agreed to this condition placed upon the final payment in escrow. Semenza received, deposited, and retained Horner's final payment in a trust account under the conditions attached to

SUPREME COURT
OF
NEVADA

(O) 1947A

5

it. As a result, an escrow agreement arose to which Semenza was an escrow agent.

*Semenza breached his escrow agent duties*

An escrow agent must execute his or her duties with "scrupulous honesty, skill and diligence." *Broussard*, 100 Nev. at 329, 682 P.2d at 1378. The agent must strictly adhere to the escrow agreement's terms. *Id.* If an escrow agent is uncertain about his or her duties as to disbursing the escrow money, he or she should seek guidance from the district court through an interpleader action. *See Wood v. Chi. Title Agency of Las Vegas, Inc.*, 109 Nev. 70, 73, 847 P.2d 738, 740 (1993) (concluding that an escrow agency breached its duties in failing to seek the court's guidance when faced with an order that confused the agency as to its duty to release the escrow money); *Virtanen v. O'Connell*, 44 Cal. Rptr. 3d 702, 709 (Ct. App. 2006) (finding that an escrow agent breached his duties in failing to seek guidance from a court when faced with competing demands for the escrow money). A failure to exercise this diligence may be a breach of an escrow agent's duties. *See Chi. Title Agency*, 109 Nev. at 73, 847 P.2d at 740; *Virtanen*, 44 Cal. Rptr. 3d at 709.

In this case, the Agreement's language as to the final payment in escrow does not contain ambiguities that preclude summary judgment. Instead, it establishes Semenza's duty to return the final payment to Horner. The Agreement, in relevant part, provides that the final payment

> is to remain in escrow with . . . Semenza . . . until such time as both the lis pendens placed on the properties . . . are removed and the lien on the property . . . has been either removed or has lapsed of its own accord. Said funds shall remain in escrow for a period of time not to exceed six months from April 15, 2006[;] if said liens are not

removed during that period of time, said funds shall be returned to [Horner].

The language requiring the return of the final payment to Horner follows the language that created Semenza's duty to hold the final payment in escrow. Hence, Semenza had a duty to hold the final payment in escrow and to return the final payment to Horner.

Despite Oilmen's failure to remove all the encumbrances before the specified date, Semenza did not return the final payment to Horner, thereby breaching his duty to do so. Between Horner and Oilmen, the final payment was either liquidated damages or a penalty under the purchase agreement. *See Mason v. Fakhimi*, 109 Nev. 1153, 1156, 865 P.2d 333, 335 (1993) (providing that liquidated damages are "the sum which a *party* to a contract agrees to pay if he fails to perform" (emphasis added)). But the extent to which the final payment was liquidated damages or a penalty did not relieve Semenza of his duty to return it to Horner. The final payment was to be held in escrow and distributed under the escrow agreement's terms.

If Semenza feared that giving Horner the final payment would enforce an unlawful penalty, he should have sought mutual instructions from Horner and Oilmen or guidance from the district court. Instead, despite knowing of the competing interests for the final payment and his duty to return it to Horner, Semenza gave the final payment to Oilmen. In this instance, where the interests to the final payment were conflicting

SUPREME COURT
OF
NEVADA

(O) 1947A

7

and the terms governing its distribution were clear, Semenza's actions constituted a breach of his escrow agent duties.[1]

### *The final payment amount was subject to recovery as damages*

In *Hart v. Hecht,* this court concluded that a party to an escrow agreement could recover the amount of money that an escrow agent misused. 104 Nev. 382, 383-84, 760 P.2d 114, 115 (1988). In that case, Hart gave her attorney, Hecht, money to be held in escrow. *Id.* at 383, 760 P.2d at 114. Hecht released some of that money without complying with the terms that governed its use. *Id.* at 383, 760 P.2d at 115. Hart filed a third-party complaint against Hecht for his mismanagement of the escrow funds. *Id.* at 383, 760 P.2d at 114-15. On appeal, this court concluded that Hecht violated the escrow agreement and owed Hart the money released in "contravention of the agreement." *Id.* at 383-84, 760 P.2d at 115.

Like Hart, Horner sought the final payment that Semenza released to Oilmen in violation of the terms that governed its distribution. *See id.* While the final payment may have been liquidated damages or a penalty between Horner and Oilmen, Semenza had the duty to handle the final payment under the escrow agreement's terms. The final payment amount is subject to recovery as damages against Semenza. *See id.* Thus, the district court erred in determining that Horner could not recover the final payment from Semenza.

---

[1]We do not resolve whether the final payment provision was an unenforceable penalty. This issue is a concern that rests with the parties to the Agreement—Horner and Oilmen—and not Semenza.

*The district court's order granting Semenza's motion in limine*

Horner argues that the district court abused its discretion in barring him from using the Agreement's requirement for the return of the final payment as evidence of damages. He contends that this evidence was relevant to the final payment amount that he sought from Semenza, that the payment constituted recoverable damages, and that the district court therefore improperly excluded it.

We review a district court's evidentiary decisions for an abuse of discretion. *Woods v. Label Inv. Corp.*, 107 Nev. 419, 425, 812 P.2d 1293, 1297-98 (1991), *disapproved on other grounds by Hanneman v. Downer*, 110 Nev. 167, 180 n.8, 871 P.2d 279, 287 n.8 (1994). An abuse of discretion is a "clear disregard of the guiding legal principles." *Allianz Ins. Co. v. Gagnon*, 109 Nev. 990, 993, 860 P.2d 720, 722-23 (1993). Relevant evidence is generally admissible. NRS 48.025. Evidence is relevant if it has "any tendency" to make the existence of a fact more or less probable. NRS 48.015.

Here, because the district court erred in finding that Horner could not recover the final payment amount from Semenza, it also abused its discretion in excluding evidence of the Agreement's requirement for the return of the final payment to Horner. This evidence had relevance to the damages against Semenza that were subject to recovery.[2]

---

[2]Horner also argues that the district court abused its discretion in limiting him to evidencing actual damages. We disagree. In his complaint, Horner alleged that Semenza breached his escrow agent duties by giving the final payment to Oilmen, and Horner sought damages that arose from breach of the escrow agent duties—damages that had a causal connection to Semenza's acts—thereby asserting only actual damages. *See* NRCP 9(g) (providing that special damages, damages beyond actual

*continued on next page . . .*

SUPREME COURT
OF
NEVADA

(O) 1947A

9

*The district court's rejection of Semenza's estoppel defense*

Semenza contends that equitable estoppel precluded Horner's claim against him. He argues that Horner's failure to demand the final payment and Horner's deposition testimony, wherein he explained why he did not demand the money, gave Semenza the right to believe that Horner intended for him to give Oilmen the final payment.

We review the decision to deny the equitable estoppel defense for abuse of discretion. *Teriano v. Nev. State Bank (In re Harrison Living Trust)*, 121 Nev. 217, 222, 112 P.3d 1058, 1061 (2005). Equitable estoppel prevents one "from asserting legal rights that, in equity and good conscience, they should not be allowed to assert because of their conduct." *Nev. State Bank v. Jamison Family P'ship*, 106 Nev. 792, 799, 801 P.2d 1377, 1382 (1990). In relevant part, estoppel requires that the estopped party "intend[ed] that his conduct shall be acted upon, or must so act that the party asserting estoppel has the right to believe it was so intended . . . [and that] the party asserting the estoppel must be ignorant of the true state of facts." *Cheqer, Inc. v. Painters & Decorators Joint Comm., Inc.*, 98 Nev. 609, 614, 655 P.2d 996, 998-99 (1982). A party's

---

*. . . continued*

damages, must be pleaded specifically); *Broussard v. Hill*, 100 Nev. 325, 330, 682 P.2d 1376, 1379 (1984) (stating that the liability arising from the wrongful release of escrow funds is based upon the "*causal* connection" between the wrongful release and "any *resulting* damage" (emphases added)); *Black's Law Dictionary* 416 (8th ed. 2004) (defining actual damages as the "amount awarded to a complainant to compensate for a proven injury or loss").

silence may give rise to estoppel. *Id.* at 614, 655 P.2d at 999. Here, Horner's silence does not support the estoppel defense.

Semenza bases his estoppel defense on Horner's failure to demand the final payment, but the Agreement did not require Horner to make this demand. Its plain language required Semenza to return the final payment to Horner if Oilmen failed to remove the encumbrances by a specified date. Semenza knew that Oilmen failed to remove the encumbrances by the specified date. Thus, Semenza was not ignorant of the facts that triggered his duty to return the final payment to Horner.

Horner's deposition did not give Semenza the right to believe that Horner intended for Semenza to give Oilmen the final payment. In that deposition, Horner stated that he did not demand the final payment because he was allowing Oilmen and Semenza to finish removing the last encumbrance. Horner explained that if Oilmen failed to remove the encumbrances, Horner would demand and use the final payment to remove the encumbrances. This was a conditional statement, and Semenza overextends its meaning in inferring that its converse was true and that he could rely on it. The conditional statement did not provide that if Oilmen removed the last encumbrance after the specified date, Horner would waive his right to the final payment. Further, Horner made this statement in the context of litigation and not in the context of giving instructions to Semenza. Horner had a right to the final payment and exercised that right in an action against Semenza.

Though Horner was silent about the final payment for over two years, Semenza, as the escrow agent, needed to break the silence by seeking either the district court's guidance or Horner and Oilmen's mutual instructions before deviating from the escrow agreement's terms. Hence,

the district court did not abuse its discretion in rejecting Semenza's estoppel defense because Semenza was not ignorant of the true state of facts and Horner's silence and testimony did not give Semenza the right to believe that Horner intended for Semenza to give the final payment to Oilmen. In light of the above, we

ORDER the summary judgment of the district court AFFIRMED IN PART AND REVERSED IN PART and the order granting the motion in limine REVERSED AND REMAND this matter to the district court for proceedings consistent with this order.[3]

_____, J.
Gibbons

_____, J.
Douglas

_____, J.
Saitta

cc:    Hon. Abbi Silver, District Judge
Eva Garcia-Mendoza, Settlement Judge
Law Offices of Michael F. Bohn, Ltd.
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP/Las Vegas
Eighth District Court Clerk

---

[3]We have considered the remaining arguments on appeal and cross-appeal and conclude that they lack merit.